UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WESLEY FINANCIAL GROUP, LLC,

    Plaintiff,

v.                                      Case No. 6:23-CV-2361-CEM-DCI

DIAMOND RESORTS U.S. COLLECTION
DEVELOPMENT, LLC, DIAMOND RESORTS
HAWAII COLLECTION DEVELOPMENT, LLC
and DIAMOND RESORTS MANAGEMENT, INC.

    Defendants.
_____

**Uniform Case Management Report**

    The goal of this case management report is to "secure the just, speedy, and inexpensive determination of" the action. *See* Fed. R. Civ. P. 1. Under Local Rule 3.02(a)(2), this case management report should be used in all civil cases except those described in Local Rule 3.02(d). Individual judges may have additional case management preferences that can be found under each judge's name on the Court's website, flmd.uscourts.gov/judges/all.

**1.**    **Date and Attendees**

> The parties may conduct the planning conference "in person, by telephone, or by comparable means[.]" *See* Local Rule 3.02(a)(1).

The parties conducted the planning conference on 2/5/2024. John Bennett, Patrick Bradford, on behalf of the Plaintiffs, and Roxane Polidora, Stacie Kinser, Jeffrey Backman, and Roy Taub on behalf of the Defendants attended the conference.

**2.**    **Deadlines and Dates**

The parties stipulate that all discovery may be stayed pending the Court's ruling on Defendants' Motion to Stay. If the Motion is denied, the parties will have 30 days to exchange initial disclosures under FRCP 26(a)(1). The parties further request the following deadlines and dates:

| Action or Event | Date |
|---|---|
| Deadline for providing mandatory initial disclosures. *See* Fed. R. Civ. P. 26(a)(1). | 30 days after Court's ruling |

|  | on Motion to Stay, if denied |
|---|---|
| Deadline for moving to join a party, *see* Fed. R. Civ. P. 14, 19, and 20, or amend the pleadings, *see* Fed. R. Civ. P. 15(a). | 120 days after initial disclosures |
| Deadline for completing fact discovery and filing any motion to compel regarding fact discovery. | 5/16/2025 |
| Deadline for serving expert disclosures under Rule 26(a)(2), including any report required by Rule 26(a)(2)(B).         Plaintiff | 6/20/2025 |
| Defendant | 7/18/2025 |
| Rebuttal | 8/15/2025 |
| Deadline for completing expert discovery and filing any motion to compel discovery regarding expert discovery. *See* Fed. R. Civ. P. 37; *Middle District Discovery* (2021). | 9/30/2025 |
| Deadline for moving for class certification, if applicable. *See* Fed. R. Civ. P. 23(c). | N/A |
| Deadline for filing any dispositive and *Daubert* motion. *See* Fed. R. Civ. P. 56. (Must be at least five months before requested trial date.) | 1/30/2026 |
| Deadline for participating in mediation. *See* Local Rules, ch. 4.  Enter mediator's name, address, and phone number. | 2/27/2026 |
| Date of the final pretrial meeting. *See* Local Rule 3.06(a). | 5/6/2026 |
| Deadline for filing the joint final pretrial statement, any motion in limine, proposed jury instructions, and verdict form. *See* Local Rule 3.06(b). (Must be at least seven days before the final pretrial conference.) | 5/13/2026 |
| Date of the final pretrial conference. *See* Fed. R. Civ. P. 16(e); Local Rule 3.06(b). | 5/20/2026 |
| Month and year of the trial term. | 6/2026 |

The trial will last approximately 15 days and be

☒   jury.

☐   non-jury.

4856-2952-1827.v1

3. **Description of the Action**

   **PLAINTIFF'S STATEMENT:**

   Plaintiff Wesley Financial Group, LLC provides timeshare exit services to timeshare owners who seek to exit their timeshares because the timeshare developer made false promises and used manipulative, fraudulent, and high-pressure sales tactics to coerce them into purchasing and/or upgrading their timeshares. By their terms timeshare contracts terminate only at the death of the consumer. Diamond is one such timeshare developer, whose unethical behavior helped create the need for a timeshare exit services market. The market for exit services was created based on consumer demand, and in response Diamond's constantly escalating prices (including timeshare points, maintenance fees, resorts fees and financing fees) and poor service (including poor lodging, and the inability for customers to schedule preferred vacation stays).

   Wesley alleges that Diamond has colluded with other timeshare developers and with the American Resort Development Association (ARDA), a trade association to which many large developers belong, to put Wesley and other timeshare exit companies out of business by, among other things, interfering with the contracts between Wesley and its customers; by requiring its owners to sign an affidavit swearing they have not engaged a third party exit company like Defendant as a condition for being released from their timeshares; developing its own competing exit program to take away business from other exit companies; and conspiring with ARDA to induce the Better Business Bureau to revoke Wesley's accreditation and to cause AARP to stop accepting advertisements from Wesley. Diamond's unilateral and collusive conduct is aimed at putting Wesley out of business so as to further harm consumers by increasing prices in an unchecked manner, and by delivering poor lodging and other services.

   ARDA is a vehicle through which Diamond colludes both with ARDA and many of ARDA's controlling trustees over the past several years - - developers like Westgate and Bluegreen. And their powerful counsel.

   Wesley contends that Diamond's actions, in conjunction with ARDA and other timeshare developers, violate Sections 1 and 2 of the Sherman Act (Counts I-IV), as well as the Florida Antitrust Act of 1980 (Count V). Diamond participates in the aftermarket for Diamond timeshare sales by offering both exits from timeshare contracts and exit services to select and access the exit. As in *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 481 (1992) Diamond controls 100% of the market share for exit products, and illegally ties its exit services to its exit products, resulting in antitrust injury to competing exit service companies, including Wesley. In addition, Diamond violates the antitrust laws by colluding with other developers to injure timeshare exit service competition in a variety of ways recited in the Complaint. Conduct that injures competition by harming consumers who, if Wesley and other exit firms are eliminated, will be able to return to the days when price increases and the provision of awful service to customers is rampid. Diamond's actions also constitute unlawful monopolization and attempted monopolization.
   .

Diamond's conduct further violates Florida Deceptive and Unfair Trade Practices Act (Count VI) by, *inter alia*, prohibiting timeshare owners from using counsel or any third party, including Wesley to assist them in negotiating a timeshare exit.. Finally, Diamond's actions constitute tortious interference with Wesley's contracts and advantageous business relationships (Count VII) and civil conspiracy to commit tortious interference (Count VIII).

**DEFENDANTS' STATEMENT:** Diamond has moved to dismiss WFG's complaint in its entirety. For the reasons explained in more detail in the motion, WFG has failed to state any claim as a matter of law.

WFG contends that Diamond's Transitions program competes unfairly with WFG's "exit services" in an attempt to allege antitrust claims for tying and monopolization. These allegations are fatally flawed because WFG does not state a relevant antitrust market and does not plausibly allege any "product" that Diamond forces its customers to purchase. WFG's tying and monopolization claims rest on the following theories: 1) that various legal procedures for ending a timeshare owner's contractual relationship with Diamond, such as a mutual release or foreclosure, are antitrust "products;" 2) that Diamond "sells" these "products" into an antitrust "relevant market" limited to its own customer base, in which by definition it has a monopoly; and 3) that Diamond uses this supposed monopoly power to gain unfair advantage in the "exit services" market. WFG's antitrust claims fail because economic power derived from contractual restrictions does not equate to antitrust market power, and an alleged market limited to parties who enter into agreements with known restrictions is not meaningful as a matter of antitrust law. *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1219-22 (11th Cir. 2002). WFG cannot state a tying claim because an "exit" from a timeshare, such as a foreclosure, is a legal procedure rather than a product that Diamond sells; and the FAC expressly alleges that "exits" are available outside the Transitions program, which means there is no tie.

WFG separately alleges that a trade association of timeshare companies has interfered with WFG's business by causing it to lose its BBB rating and its access to AARP advertising. But WFG has not sued the trade association. It sues only Diamond, one of 350 members of the trade association, and alleges in conclusory fashion, that the association is Diamond's agent or co-conspirator. It is the trade association's alleged actions that give rise to the WFG's conspiracy, tortious interference, and unfair business practice claims. WFG does not state a claim based on these allegations because Diamond's mere "participation in trade associations provides no indication of conspiring." *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1295-96 (11th Cir. 2010); *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No. 8:19-cv-1895-CEH-CPT, 2021 WL 4948151, at *13 (M. D. Fla. Oct. 18, 2021). Moreover, the alleged interference with the BBB and the AARP was directed at a single competitor (WFG), not at "competition itself," which is insufficient to support a claim for injury to competition. *Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004).

4. **Disclosure Statement**

☒   The parties have filed their disclosure statement as required by Federal Rule of Civil Procedure 7.1 and Local Rule 3.03.

5. **Related Action**

☒   The parties acknowledge their continuing duty under Local Rule 1.07(c) to notify the judge of a related action pending in the Middle District or elsewhere by filing a "Notice of a Related Action." No notice need be filed if there are no related actions as defined by the rule.

6. **Consent to a Magistrate Judge**

> "A United States magistrate judge in the Middle District can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." Local Rule 1.02(a). With the parties' consent, a district judge can refer any civil matter to a magistrate judge for any or all proceedings, including a non-jury or jury trial. 28 U.S.C. § 636(c).
>
> The Court asks the parties and counsel to consider the benefits to the parties and the Court of consenting to proceed before a magistrate judge. Consent can provide the parties certainty and flexibility in scheduling. Consent is voluntary, and a party for any reason can decide not to consent and continue before the district judge without adverse consequences. *See* Fed. R. Civ. P. 73(b)(2).

☐   The parties do consent and file with this case management report a completed Form AO 85 "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," which is available on the Court's website under "Forms."

☒   The parties do not consent.

7. **Preliminary Pretrial Conference**

☒   The parties do not request a preliminary pretrial conference before the Court enters a scheduling order. However, Defendants have filed a Motion to Stay Discovery pending the Court's ruling on Defendant's Motion to Dismiss. The outcome of the Motion to Stay Discovery will affect scheduling.

☐   The parties do request a preliminary pretrial conference, and the parties want to discuss enter discussion points.

8. **Discovery Practice**

   The parties should read the Middle District Discovery Handbook, available on the Court's website at flmd.uscourts.gov/civil-discovery-handbook, to understand discovery practice in this District.

   ☒ The parties confirm they will comply with their duty to confer with the opposing party in a good faith effort to resolve any discovery dispute before filing a motion. *See* Local Rule 3.01(g); *Middle District Discovery* (2021) at § I.A.2.

9. **Discovery Plan**

   The parties submit the following discovery plan under Rule 26(f)(2):

   A.  The parties agree to the timing, form, or requirement for disclosures under Rule 26(a):

   ☐ Yes.
   ☒ No; instead, the parties agree to these changes: Initial disclosures due 30 days after ruling on Defendant's Motion to Stay, if denied.

   B.  Discovery may be needed on these subjects: The allegations in Plaintiff's complaint, including but not limited to: the business practices of WFG, other timeshare exit companies, Defendants, and other timeshare developers; WFG's customers; the geographic and product markets alleged in the complaint; and the activities of timeshare industry trade associations. The parties may identify the need for discovery on additional topics as the pleadings are settled. list the subjects.

   C.  Discovery should be conducted in phases:

   ☒ No.
   ☐ Yes; describe the suggested phases.

   D.  Are there issues about disclosure, discovery, or preservation of electronically stored information?

   ☒ No.
   ☐ Yes; describe the issue(s).

   E.  ☒ The parties have considered privilege and work-product issues, including whether to ask the Court to include any agreement in an order under Federal Rule of Evidence 502(d).

  F. The parties stipulate to changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure and Local Rule 3.04 or other limitations:

   ☒ No.

   ☐ Yes; describe the stipulation.

**10.  Request for Special Handling**

  ☒ The parties do not request special handling.

  ☐ The parties request special handling. Specifically, describe requested special handling.

  ☐ Enter party's name unilaterally requests special handling. Specifically, describe requested special handling.

**11.  Certification of familiarity with the Local Rules**

  ☒ The parties certify that they have read and are familiar with the Court's Local Rules.

**12.  Signatures**


*/s/ John J. Bennett*
John J. Bennett, Esq.
Florida Bar No: 98257
Paul N. Mascia, Esq.
Florida Bar No: 0489670
NARDELLA & NARDELLA, PLLC
135 W. Central Blvd., Suite 300
Orlando, Florida 32801
Telephone: (407) 966-2680
Facsimile: (407) 966-2681
pmascia@nardlellalaw.com
jbennett@nardellalaw.com

&

Patrick A. Bradford, Esq.
Bradford Edwards LLP
12 East 49th Street, 11th Floor
New York, NY 10017
Office: (917) 671-9406

*Counsel for Wesley Financial Group, LLC*

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Roxane A. Polidora*
ROXANE A. POLIDORA (admitted *pro hac vice*)
roxane.polidora@pillsburylaw.com
STACIE O. KINSER (admitted *pro hac vice*)
stacie.kinser@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:   415.983.1000
Facsimile:    415.983.1200

GREENSPOON MARDER LLP

 */s/ Jeffrey A. Backman*
Richard W. Epstein (Bar No. 229091)
Jeffrey A. Backman (Bar No. 662501)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-343-6958
richard.epstein@gmlaw.com  maria.salgado@gmlaw.com
jeffrey.backman@gmlaw.com  mary.torres@gmlaw.com

*Attorneys for Defendants, Diamond Resorts U.S. Collection; Development, LLC; Diamond Resorts; Hawaii Collection Development, LLC; and Diamond Resorts Management, Inc.*

4856-2952-1827.v1